E-FILED
Wednesday, 20 December, 2017  11:22:54 AM
Clerk, U.S. District Court, ILCD

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
URBANA DIVISION

UNITED STATES OF AMERICA,

Plaintiff,

v.

GREGORY GRIFFIN,

Defendant.

No. 17-20047-CSB-EIL

**MEMORANDUM OF LAW IN SUPPORT OF
MOTION TO SUPPRESS EVIDENCE**

Defendant Gregory Griffin, through his attorney Assistant Federal Public Defender Johanes Maliza, pursuant to Fed. R. Crim. P. 12(b)(3)(C) and the Fourth Amendment of the United States Constitution, makes this motion to suppress all statements obtained and evidence seized as a result of the search of his car on July 26, 2017.  Mr. Griffin makes this motion on grounds that the Decatur Police searched his car without a warrant, and there is no applicable exception to the warrant requirement of the Fourth Amendment.

## I.  FACTS

The facts surrounding the search of Mr. Griffin's car on July 26, 2017 will be more fully detailed at a hearing on this motion, but a brief summary may help the Court read this memorandum of law.

On July 26, 2017, Officer Ramey of the Decatur Police Department received a phone call from an unidentified Confidential Source ("CS") stating:

> [H]e observed the black male holding a handgun while
> in the driver seat and appeared to have been removing
> it from his waistline are [*sic*] and holding it around the

> arm rest/seat area.  The unk [*sic*] black male then exited the vehicle and walked inside the store by the c/s could not tell if he had left the handgun in the vehicle or placed it in his pants.  The c/s also advised that the license plate was 98716PV.

Case Supplemental Report of Officer Ramey at 7.  The unidentified CS' statement only described the driver as a "thin build black male with long braided hair, wearing black shorts and black t-shirt."

Officer Ramey's report states that the unidentified CS had provided information in the past, but no support is given for this assertion.  Nevertheless, Decatur Police proceeded to the location described by the unidentified CS, and began to observe the referenced car.

The officers' first, and unavoidable, observation would have been that the windows of the car are extremely tinted.  A photograph of the car is attached as Exhibit A.  Indeed, they are so tinted that a person cannot see through the windows in order to observe the actions of a person in the driver's seat, even right up at the window.

The officers watched Mr. Griffin return to his car, then followed as he drove for a few blocks to a car repair shop.  At the shop, Mr. Griffin parked, and started walking to the store.  As he walked into the store, the officers pulled up in their cars, spooking Mr. Griffin, and causing him to run.  Before they caught him, he stopped, put his hands up, and was "placed in custody without further incident."

Officer Ramey reports that "Mr. Griffin was placed in a squad car," and that

> Before we started to search the vehicle, I walked up to the closed passenger door and observed a large black revolver sticking out from the top of between the arm rest and the driver seat. I photographed the handgun from both the passenger and driver side before I recovered the firearm.

Case Supplemental Report of Officer Ramey at 8. Even though, given the nature of the charges, they appear to be Rule 16 evidence, no such photographs have been provided to Mr. Griffin.

## II. ARGUMENT

### A. Legal Standard

Under the Fourth Amendment, "a search is generally considered unreasonable unless the government obtains a warrant issued upon probable cause." *United States v. Basinski*, 226 F.3d 829, 833 (7th Cir. 2000). Evidence obtained from a warrantless search should be suppressed where officers could not have harbored an objectively reasonable belief in the existence of probable cause to conduct a search. *United States v. Pless*, 982 F.2d 1118, 1125 (7th Cir. 1982). The government bears the burden of justifying an exception to the warrant requirement by a preponderance of evidence. *Basinski* at 833. The scope of a warrantless search is no broader and no narrower than a magistrate could legitimately authorize by warrant. *United States v. Charles*, 801 F.3d 855 (7th Cir. 2015).

In evaluating the presence, or absence, of probable cause when based upon the word of an informant, courts are to conduct a "totality of the circumstances" test. *Illinois v. Gates*, 462 U.S. 213, 238 (1983). The totality of the circumstances test considers several factors, including: (1) the extent of

3

corroboration of the informant's statements; (2) whether the informant had firsthand knowledge of the events; (3) the amount of detail provided; (4) the interval between the date of the events and the police officer's application for the search warrant; and (5) whether the informant personally appeared and presented an affidavit or testified before a magistrate. *United States v. Sims*, 551 F.3d 640, 644 (7th Cir. 2008).

If an individual is arrested, a search of the car incident to that arrest is justified if the individual is unsecured and within reach of the passenger compartment. *Arizona v. Gant*, 129 S. Ct. 1710, 719 (2009). Where the search is not justified incident to the arrest, a police officer has probable cause to search the car if it is reasonable to believe the vehicle contains evidence relevant to the arrest. *United States v. Slone*, 636 F.3d 845, 848 (7th Cir. 2011).

In Mr. Griffin's case, there was no warrant, thus the burden is upon the Government to adduce evidence justifying the search of the car. The Decatur Police's search of the car was based upon the word of an unidentified CS. In order to bolster the existence of probable cause, the police reports make a conclusory statement that the CS was a reliable source. But the record contains no information supporting the unidentified CS' reliability or track record of credibility. Even if prior events suggested reliability – a fact not established – that reliability should have been undercut immediately when the officers noted the CS' omissions. Significantly, the CS did not inform the police that the driver's and passenger's windows were too dark to see inside, or how he/she saw inside, himself.

The darkness of the window, and the practical impossibility of seeing the driver's waist, also speak to the *Sims* corroboration factor. Specifically, the exceedingly dark window tints on all windows would have immediately controverted the CS' statements, because the CS could not have seen in the windows in order to view a person with a gun. Likewise, since the SUV is more elevated than an average car, the driver's waistline and armrest (where the CS alleged to see the gun) would not be visible to an individual looking in.

Taken together, the window tint and height inform the third *Sims* factor, firsthand knowledge. The officers would have known that the CS did not have firsthand knowledge of the contents of Mr. Griffin's car, because, again, there was no way he/she could have seen into the car.

The detail, or lack thereof, provided by the CS (another *Sims* factor) also favors Mr. Griffin. The CS's information only described legal activity, and gave no indication of the illegality necessary to support probable cause. *See United States v. Funds in the Amount of $9,800*, 952 F. Supp. 1254, 1263 (N.D. Ill. 1996) (finding no probable cause in forfeiture context where government suspicion rests upon legal activity). The CS said an individual had a gun; legal activity. The CS did not identify the individual beyond saying he was a clothed black man with hair; no inferences can be drawn from this description. The CS said that the individual was in a cell phone store; also a legal activity. Put another way, at best the CS appeared to describe a man driving to a shooting range, absent some other detail.

5

By way of example, other vital details absent from the police reports, and presumably the CS' statement include: (a) Where was the CS relative to the car when he/she observed the driver? (b) Who was the driver—did the CS know the driver to be a felon? (c) What was the CS doing in the area? (d) Had the CS ever had a dispute with the driver?

While the government may state that the CS' real-time reporting of the information is in its favor, the fact that the CS never went before a magistrate undercuts this fact. An immediate but unsworn and unevaluated [by a neutral] statement is no better than a later-in-time unsworn statement.

The officers ignored several red flags. The fact that the CS did not inform the officers that he/she could not see into the car because of the window height and/or window tint, was a red flag. The CS' absence of detail was a red flag. These flags undermine any claim to have probable cause to search the car. In its absence, the officers were operating under mere suspicion. *United States v. Gilbert*, 45 F.3d 1163, 1166 (7th Cir. 1995) (Probable cause requires more than mere suspicion).

Though Officer Ramey reports that he, himself, looked into the car's closed door and observed a gun, such an occurrence is highly unlikely. Given the extreme tinting on the window, he could not have seen in. The absence of those photographs from the Rule 16 materials raises more questions about what was visible through the passenger side window.

6

When Mr. Griffin was arrested,[1] the search was not conducted incident to his arrest because he was secured and could not have accessed the passenger compartment.

As a result, the search had to be justified by a belief that the car contained evidence relevant to the arrest. *Slone* at 852. But the officers in this case were already alerted to the fact that their CS had withheld details and lied to them. The tint of the windows on Mr. Griffin's car is remarkably dark – it would stick out to anyone who sees the car. The immediate reaction of the officers should have been to stop, bring the matter before a magistrate, and have a neutral arbiter decide whether they could search the car.

### III.    CONCLUSION

WHEREFORE Mr. Griffin prays that the Court suppress all statements and evidence obtained as a result of the search of his car.

Respectfully Submitted,

Date: December 20, 2017

GREGORY GRIFFIN, Defendant,

THOMAS PATTON, Federal Defender

s/ Johanes Maliza
Johanes Christian Maliza
Office of the Federal Public Defender
600 E. Adams, Third Fl.
Springfield, IL 62701
Telephone:    217-492-5070
Facsimile:    217-492-5077
E-Mail: johanes_maliza@fd.org

---

[1] This motion makes no concession that the arrest of Mr. Griffin was lawful.

7

CERTIFICATE OF SERVICE

I certify that on December 20, 2017, the foregoing was filed electronically. Notice of this filing will be sent by operation of the Court's electronic filing system to all parties indicated on the electronic filing receipt. Parties may access this filing through the Court's system.

<u>s/ Johanes Maliza</u>